IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO. 3:08CV29-V
(3:01CR202-V)

| | |
|---|---|
| ALBERT ESPOSITO, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **MEMORANDUM** |
| ) | **AND ORDER** |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| _____) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 filed January 25, 2008 (Doc. No. 1); Respondent's Answer and Motion for Summary filed June 24, 2008 (Doc. Nos. 13 and 14); and Petitioner's Reply thereto filed October 6, 2008 (Doc. No. 20.)

For the reasons stated below, the Government's Motion for Summary Judgment will be granted and Petitioner's Motion to Vacate will be denied.

**I. FACTUAL AND PROCEDURAL HISTORY**[1]

From 1998 through 2001, Petitioner and several others created various entities and defrauded numerous investors of millions of dollars. Petitioner convinced his victims, through seminars and conversations, to invest their money with him in investment vehicles such as gold bullion, aviation, real estate and Christian-oriented causes. In reality, however, Petitioner used

---

[1] Some of the facts have been taken from the Fourth Circuit Court of Appeals decision. United States v. Esposito, 205 Fed. App'x 995 (4th Cir. 2006)

1

his investors' money for the personal benefit of himself and others and to pay other investors to trick them into believing that their investments were making money.

On November 5, 2001, Petitioner and three co-defendants were charged in a Bill of Indictment with one count of conspiracy to commit offenses against the United States, including mail fraud and wire fraud, in violation of 18 U.S.C. § 371; two counts of mail fraud and aiding and abetting mail fraud in violation of 18 U.S.C. §§ 1341 and 2; four counts of wire fraud and aiding and abetting wire fraud, in violation of 18 U.S.C. §§ 1343 and 2; twenty counts of money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A), 1956(a)(1)(B)(I); and one count of conspiracy to engage in money laundering and in monetary transactions in property derived from unlawful activity in violation of 18 U.S.C. § 1956(h).

On June 18, 2002, Petitioner filed a motion requesting that he be permitted to defend himself but also keep his court-appointed counsel, Steve Meier, as assistant counsel. (Criminal Case 3:01cr202, Doc. No. 84.) The Court granted Petitioner's motion on August 14, 2002. (Id., oral order; docket entry 8/14/02). On April 13, 2004, Petitioner's jury trial commenced before the undersigned. At the conclusion of the Government's case, Petitioner moved, unsuccessfully, for a judgment of acquittal. At the conclusion of the trial, the Government moved to dismiss two of the wire fraud counts and four of the money laundering counts. The jury found Petitioner not guilty of two of the money laundering counts and guilty of the twenty remaining counts.

On March 3, 2005, the Probation Office prepared a Presentence Report ("PSR") in preparation for Petitioner's sentencing hearing. The Probation Officer grouped counts according to United States Sentencing Guidelines § 3D1.2(d). Pursuant to Sentencing Guidelines § 3D1.3, the Probation Officer used the highest adjusted offense level of 42 as the total offense level,

which, when combined with a criminal history category I, yielded a Guidelines range of imprisonment of 360 months to life. Probation also noted that statutory maximum ranges for the various counts, including a maximum of five years for the conspiracy and mail fraud counts, 30 years for the wire fraud counts, 20 years for the money laundering counts in violation of 18 U.S.C. § 1956 and 10 years for the money laundering counts in violation of 18 U.S.C. § 1957(a).

The Probation Officer recommended a three-level enhancement based on Petitioner's knowledge that part of the funds laundered were the proceeds of an unlawful activity involving the manufacture, importation, or distribution of narcotics or other controlled substance. The Probation Officer noted in the Offense Conduct section that in January, 2000, Petitioner negotiated with an undercover officer in South Florida to launder drug proceeds. (PSR at 7.) According to the Probation Officer, Petitioner discussed with the officer that he was running investment schemes in North Carolina and proposed that he use the drug proceeds to pay the investors in his investment schemes and then wire an equivalent amount of money, less a seven percent fee, from one of his company bank accounts to an account designated by the undercover officer. (Id. at 7-8.) On July 20, 2000, the officer provided $97,000 in cash to Petitioner's pilot for delivery to Petitioner. (Id. at 8.) Five days later, on July 25, 2000, the officer received a wire transfer of $90,000 at the offshore bank he had designated to Petitioner, representing the $97,000 less a $7,000 fee. (Id.) The officer provided another $194,000 in cash to Petitioner on August 30, 2000, and received wire transfers to the offshore account from early September through late October 2000. (Id.) According to the Probation Officer, Petitioner ultimately laundered $291,000 of purported drug proceeds and was paid $21,000 for his money laundering services. (Id.) The Probation Officer also recommended a four-level adjustment for Petitioner's role as

organizer/leader and a two-level adjustment for obstruction of justice.

Petitioner filed written objections to the PSR. On October 12, 2005, Petitioner appeared for his sentencing hearing. During the hearing, Petitioner confirmed that he had reviewed the PSR with Mr. Meier and Mr. Meier argued on his behalf that in determining Petitioner's sentence, the Court should use the "heartland" of the offenses committed by Petitioner and sentence him to the terms of incarceration applicable to the wire and mail fraud offenses rather than the money laundering offenses. (Sentencing Transcript at 2-3.) More specifically, Petitioner argued that the Supreme Court's decision in United States v. Booker, 543 U.S. 200 (2005), essentially reversed the 2000 amendments to the Sentencing Guidelines and had the effect of rendering relevant again the "heartland" analysis that was in effect prior to the 2000 amendments. (Id. at 4-6.) Arguing that the Ponzi scheme for which Petitioner was convicted primarily consisted of wire and mail fraud, rather than money laundering, Petitioner argued that the Court should sentence him based on the fraud counts. (Id. at 6-7). Although Petitioner recognized that the Court was vested with discretion in its sentencing decision under Booker, he argued that this discretion did not come into play until after the Court determined the appropriate heartland for sentencing purposes. (Id. at 8.)

Petitioner also argued that the Court should impose a variance sentence under Booker and 18 U.S.C. § 3553(a) on the basis of the nature and circumstances of the offense and the history and characteristics of the Petitioner. (Sentencing Transcript at 8.) Mr. Meier noted that Petitioner already served four years in jail, two-and-a-half of which had been in near isolation due to his special needs as he prepared for trial. (Id. at 10-11.) Petitioner acknowledged that the Court had "gone to great lengths to allow him to prepare the trial and prepare as a pre so

defendant" and noted that Petitioner's relative isolation in jail may have been unavoidable. (Id.) Petitioner also presented several witnesses who testified that although they were technically considered "victims" of Petitioner's Ponzi scheme, they did not believe that Petitioner intended to cheat anyone. (Id. at 13, 15, 16, 21, 25, 26-30.) These witnesses also testified about the various good works and improvements to the community effected by Petitioner. (Id. at 14, 18-20.)

In response, the Government asserted that, as set forth in the PSR, the money laundering Guidelines provided the applicable Guidelines range of imprisonment. (Sentencing Transcript at 42.) In support of the Government, Mr. Steven Miller, one of the victims, requested that he be permitted to testify. (Id.) Following his testimony and further argument by the Government, the Court overruled each of Petitioner's objections, finding that the evidence supported each of the enhancements recommended in the PSR by a preponderance of the evidence. (Id. at 49-50.) With respect to whether Petitioner intended to commit fraud, the Court noted that the jury "resolved all questions of intent" beyond a reasonable doubt. (Id. at 52.) Next, the Court noted that the planning involved in the offenses committed by Petitioner was "based on ingenious and highly devious methods"; that Petitioner employed "the ruse of the church" and misused Christianity in effecting his offenses; that it was undisputed that Petitioner was the organizer and leader; and that "[t]here was an obstruction of evidence." (Id. at 53.) The Court then found that based on the characteristics of the Petitioner, the nature of the offense, all of the sentencing factors set forth in § 3553(a), and the Sentencing Guidelines, the low end of the Guidelines was an appropriate sentence. (Id.) The Court then sentenced Petitioner to a total of 360 months imprisonment; 60 months on each of the fraud counts to run concurrently, 240 months on each of

the § 1956 money laundering counts to run concurrently with each other and with the fraud counts, and 120 months on each of the § 1957(a) money laundering counts, with each of § 1957(a) money laundering counts to run consecutive to the fraud and § 1956 counts. (Id at 53-54.)

On October 2, 2005, Petitioner filed a timely notice of appeal. This Court entered its judgment on December 15, 2005. On appeal, Petitioner, represented by Mr. Meier, presented four issues: (1) whether the district court abused its discretion in permitting the Government to ask Petitioner's character witness, Mr. Brooks, whether he was aware of Petitioner's prior conviction for money laundering drug proceeds; (2) whether there was sufficient evidence to support the jury's finding that Petitioner intended to defraud his victims; (3) whether the district court abused its discretion in failing to correct the conditions of Petitioner's confinement and in denying Petitioner's final motion for a continuance; and (4) whether the district court erred in applying the money laundering Sentencing Guidelines to determine his sentence. In addition to the brief submitted on his behalf by Mr. Meier, Petitioner also filed a pro se supplemental brief.[2]

On November 16, 2006, the Fourth Circuit affirmed this Court's judgment. United States v. Esposito, 205 Fed. App'x 995 (4th Cir. 2006). In its opinion, the Court rejected each of Petitioner's claims, noting that "the evidence of [Petitioner's] fraudulent intent was overwhelming and included testimony regarding multiple admissions by [Petitioner] that he was running a Ponzi scheme rather than offering legitimate investment opportunities" and holding that the district court properly sentenced Petitioner in accordance with the Court's post-Booker

---

[2] Petitioner contends that his brief was not accepted by the Fourth Circuit Court of Appeals. (Reply Brief at 11.)

directives. Id. at 998.

On January 30, 2008, Petitioner filed the instant Motion to Vacate. In his motion, Petitioner presented four claims of ineffective assistance of counsel. Specifically, Petitioner contends that Mr. Meier was ineffective because he failed to present during sentencing and on appeal: (1) that the value of the money laundered for purposes of the Sentencing Guidelines should have been based on the net proceeds of the offense, rather than the gross proceeds; (2) that the laundering of proceeds from drug distribution "arranged by the government" was not part of the same course of conduct or common scheme as the laundering of proceeds from mail and wire fraud; (3) that the destruction of evidence for which Petitioner was held responsible in the PSR was destroyed per the instruction of Attorney Patrick Daugherty before Petitioner had knowledge of the investigation in his case; and (4) that Petitioner did not threaten cooperating witness, Mr. Sutta, but rather, threatened only to file criminal or civil charges against him. In support of these allegations, Petitioner submitted an affidavit in which he states that he asked Mr. Meier to assert each of these arguments on his behalf. In response, Mr. Meier has submitted an affidavit contradicting Petitioner's affidavit. In particular, Mr. Meir states that in accordance with Petitioner's contention that he was uniquely able to explain his version of events and represent himself, Petitioner "acted throughout the entire pretrial, trial, and presentencing period as lead counsel," and that petitioner wrote his own sentencing memorandum. (Id. at 1-2.) Mr. Meier states further that during the presentencing period, he "acted upon [Petitioner's] instructions and performed the work for [Petitioner] that he requested, including filing the objections he requested to the presentence report and the compilation of his variance request . . . ." (Id. at 2.) According to Mr. Meier, at some point prior to Petitioner's sentencing hearing, Petitioner

7

decided that his arguments would have more credibility if asserted by Mr. Meier, but in making those arguments, Mr. Meier "was still acting to fulfill [Petitioner's] direction and intent . . . ," such that "[a]ll filings, legal analysis, and legal arguments were made at [Petitionr's] direction and consultation." (Id.) Mr. Meier denies in his affidavit that Petitioner asked him to argue the issues raised in his Motion to Vacate. (Id. at 2-3.)

## II. LEGAL DISCUSSION

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . . " in order to determine whether a petitioner is entitled to any relief. If the motion is not dismissed after that initial review, the court must direct the government to respond. Id. The court must then review the government's answer and any materials submitted by the parties and determine whether an evidentiary hearing is warranted pursuant to Rule 8(a). Following such review, it is clear to the Court that Petitioner is entitled to no relief on his claims; thus a hearing is not required. Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

**Ineffective Assistance of Counsel**

To establish a claim of ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced by such constitutionally deficient representation. Strickland v. Washington, 466 U.S. 687-91 (1984). In measuring counsel's performance, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; see also Fields v. Attorney General of State of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1992). Furthermore,

in considering the prejudice prong of the analysis, a court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). The petitioner "bears the burden of proving Strickland prejudice," Fields, 956 F.2d at 1297 (citing Hutchins, 724 F.2d at 1430-31), and if a petitioner fails to meet this burden, a reviewing court need not consider the performance prong. Id, at 1290 (citing Strickland, 466 U.S. at 697).

### 1. Proceeds Argument

Petitioner contends that his counsel was ineffective for "failing to object to the PSR and argue at sentencing and on appeal that the value of the funds money laundered must be based on the net proceeds amount of $1,116,489.30 Esposito was convicted of using to make payments, purchases, and wire transfers, to lull investors into believing the investments were safe." [3] (Motion at 4.) In making this argument, Petitioner notes that there was a circuit split on this issues of whether "proceeds" meant gross or net proceeds and that the Supreme Court granted certiorari on the issue in Santos v. United States, 461 F.3d 886 (7th Cir. 2006).

Petitioner cites no authority for the proposition that "the value of the funds" laundered for purposes of Sentencing Guidelines § 2S1.1 as set forth in the 2000 edition of the United States Sentencing Guidelines was limited to net proceeds. The case cited by Petitioner, United States v.

---

[3] To the extent that Petitioner also contends that the undersigned instructed the jury as to the definition of proceeds, the transcript pages he cites in support are instructions to the jury with respect to the forfeiture phase of the proceeding. Trial Transcript, Vol. XI at 1882. Indeed, during the forfeiture phase and in response to a question by the jury, Petitioner, acting pro se, objected to the Court including the 27.6 million on the special verdict sheet. (Id. at 1908). The Court overruled Petitioner's objection specifically stating "I recall a certain judge who ruled in accordance with the net proceeds theory and that judge was reversed." (Id. 1908-09.)

9

Santos, a Seventh Circuit case, involved the interpretation of "proceeds" for purposes of 18 U.S.C. § 1956(a)(1), not the interpretation of "value of the funds [laundered]| for purposes of Sentencing Guidelines § 2S1.1 as it existed in 2000, and the Seventh Circuit acknowledged in Santos that each of the circuit courts of appeals to have considered the issue, other than the Seventh Circuit, had concluded that "proceeds" meant gross proceeds, not net. Id. at 892 n.4. In his reply brief, Petitioner argues that although the Supreme Court granted certiorari in the Santos case after the Fourth Circuit decided Petitioner's appeal, the case prior to Santos was U.S. v. Sciablabba, 282 F.3d 475 (7th Cir. 2002) and it held that proceeds of money laundering applied to profits not receipts. Petitioner explained that the Sciablabba case supports his argument that his counsel should have argued at sentencing and on appeal that proceeds for purposes of the Sentencing Guidelines meant net proceeds.

The Court has reviewed the cases Petitioner has cited in support of his argument and notes first that both cases were from the Seventh Circuit and therefore not controlling authority. Moreover, the Supreme Court did not grant certiorari in Santos case until April 23, 2007, five months after the Fourth Circuit decided Petitioner's appeal.[4] Next, the specific issue in both

---

[4] Further, after the Supreme Court granted certiorari in 2007, it issued a plurality decision, United States v. Santos, 128 S.Ct. 2020 (2008) holding the term "proceeds" to means "profits" and stated that " a criminal who enters into a transaction paying the expenses of his illegal activity cannot possibly violate the money-laundering statute, because by definition profits consists of what remains after the expenses are paid." Id. at 2027. The Fourth Circuit has since noted that because Santos was a plurality opinion, the holding of the Court for precedential purposes is the narrowest holding that garnered five votes and has limited its narrow holding of the "profits" definition of "proceeds" to money laundering cases involving a gambling operation like the one in that case. United States v. Howard, 2009 WL 205649 (January 29, 2009) (unpublished). Therefore, Fourth Circuit precedent that "proceeds" means "receipts" except regarding an illegal gambling charge, still stands. See e.g. United States v. Singh, 518 F.3d 236, 247 (4th Cir. 2005) (recognizing that funds used by prostitutes to pay the cost of a hotel room for purpose of prostitution constituted "proceeds"; United States v. Caplinger, 339 F.3d 226, 233 (4th

10

cases was the definition of "proceeds" for purposes of the money laundering statute. The issue here is "the value of the funds" laundered for purposes of the Sentencing Guidelines. Petitioner has cited no authority supporting his contention that under the 2000 Sentencing Guidelines the value of the finds laundered for purposes of § 2S1.1 was limited to net proceeds. Simply put, Petitioner has not established that Mr. Meier was deficient or that Petitioner was prejudiced by his representation. Therefore Petitioner's ineffective assistance of counsel claim is dismissed.

With respect to his claim that counsel was ineffective for failing to raise this issue on appeal, the Court notes that counsel is under no obligation to raise every issue on appeal. Jones v. Barnes, 463 U.S. 745 (1983). As stated above, Petitioner cites no authority for the proposition that "the value of the funds" laundered for purposes of Sentencing Guidelines § 2S1.1 as set forth in the 2000 edition of the United States Sentencing Guidelines was limited to net proceeds. In his reply brief, Petitioner contends that his counsel refused to supplement his brief in direct contradiction to Petitioner's wishes. He argues that "[t]his fact alone is enough to deny the government summary judgment." (Reply Brief at 15.) Petitioner is incorrect as this is not the standard for an ineffective assistance of counsel claim. Petitioner has not established either prong of the Strickland test with respect to this claim.[5]

---

Cir. 2003) (holding that the element of use of unlawful proceeds can be proven by circumstantial evidence that the defendant applied unlawful proceeds to promote and perpetuate his scheme); United States v. Stewart, 256 F.3d 231, 250 (4th Cir. 2001) (affirming a money-laundering conviction where proceeds from the sale of drugs were used to further the drug operation).

[5] Mr. Meier's role as subordinate co-counsel with Petitioner, acting pro se as his own primary counsel, can have an insulating effect tending to protect him from ineffective assistance claims, but because of the analysis herein it is not necessary to rely upon or probe the extent of this effect.

## 2. Money Laundering

Petitioner argues that his counsel was ineffective for failing to object to the PSR and argue at sentencing and on appeal that the laundering of proceeds from purported drug transactions was not part of the same course of conduct or common scheme as the mail and wire fraud offenses for which he was convicted. In support, Petitioner cites case law establishing that the mere fact that a defendant laundered money for different offenses does not mean that they were part of a common scheme or course of conduct. The cases cited by Petitioner are distinguishable from the instant case because in each of those cases the alleged relevant conduct was not connected with the offense at issue. However, here the evidence as set forth in the Offense Conduct section of the PSR establishes that Petitioner used the purported drug proceeds provided by an undercover officer to pay investors in the Ponzi scheme he perpetrated in North Carolina, the same investment scheme that generated the mail and wire fraud convictions in this case. Thus, the laundering of the purported drug proceeds was used in the course of the underlying mail and wire fraud offenses, as Petitioner laundered the money by using it to further his investments. Petitioner has not established that his counsel was ineffective for failing to argue, at sentencing or on appeal, that the laundering of drug proceeds was not part of the same course of conduct or common scheme as the mail and wire fraud offenses. Therefore he has not satisfied his burden under <u>Strickland</u> and his ineffective assistance of counsel claim is denied.[6]

---

[6] To the extent that Petitioner attempts to include an alternative double jeopardy claim in his reply brief, the Court notes Petitioner's reply brief is not the appropriate vehicle in which to raise new claims. Petitioner's claims are limited to those raised in his Motion to Vacate and those in any timely filed motion to amend. The Court notes that Petitioner did not file a motion to amend in the instant case. Therefore, the Court will not consider Petitioner's double jeopardy claim.

### 3. Obstruction of Justice Enhancement

Petitioner contends that his counsel was ineffective for failing to object to the PSR and argue at sentencing and on appeal that he should not have received the obstruction of justice enhancement because (1) the destruction of evidence occurred prior to his knowledge of the Government's investigation and (2) his threat against Mr. Sutta was only that he would file criminal charges or a civil action against him NOT that he would harm Mr. Sutta and his family for cooperating with investigators and agreeing to testify against Petitioner.

First, the Court notes that Petitioner's objections to the PSR included an objection to the obstruction enhancement. (See PSR and objection eight to the PSR). Indeed, Petitioner objected to the obstruction enhancement included in the PSR on the basis that he had not improperly destroyed evidence and that he did not threaten Mr. Sutta. While counsel did not specifically argue this objection at the sentencing hearing, the Court ruled on the objection based on Petitioner's written objections to the PSR. (Sentencing Transcript at 50.) Therefore, counsel could not be ineffective for failing to raise an argument that he did, in fact, raise in the written objections to the PSR and the objections were, in fact, ruled upon at the Sentencing Hearing.

Moreover, at trial, Mr. Sutta testified that Petitioner directed the destruction of documents after Mr. Branch was subpoenaed and testified in federal court in a similar case sometime in the first quarter of 2001. (Trial Transcript, April 16, 2004 at 788 - 89.) Therefore the evidence at trial supported the obstruction enhancement on the basis that Petitioner was aware of a federal investigation into business dealings similar to his at the time he ordered the destruction of evidence. Although Mr. Branch was subpoenaed in a different case, Mr. Sutta testified that the documents were destroyed because "we knew somebody was coming." Id. 789. Additionally,

Petitioner admits that he threatened Petitioner with criminal charges or a civil suit. He challenges the Probation Officer's finding that he "called and threatened to harm Sutta and his family for cooperating with investigators and agreeing to testify against [him]." The measure for determining whether the application of the obstruction of justice enhancement is appropriate on the basis of a threat is not the type of threat, but whether that threat is an attempt to intimidate in an effort to impede the administration of justice. See, e.g., United States v. Hardridge, 100 Fed. App's 743, 748 - 49 (10th Circuit) (affirming application of obstruction of justice enhancement to defendant who handed his girlfriend a letter during his trial requesting that she inform a Government witness of the weakness of the Government's case against him and that she then dispose of the letter); United States v. James, 328 F.3d 953, 956-57 (7th Cir. 2003) (affirming application of obstruction of justice to defendant who mailed documents purporting to be a contract and security agreement requiring court officials to pay for their use of the defendant's name). Petitioner does not contest that he did, in fact, threaten Mr. Sutta. (Reply Brief at 9.) The undersigned ruled on Petitioner's written objection to the PSR based on the obstruction enhancement. The evidence supported the Court's ruling. Petitioner has not established either prong of the Strickland test regarding his claim that his counsel should have argued this objection at sentencing.

With respect to Petitioner's argument that his counsel should have raised this issue on appeal, counsel is under no obligation to raise every issue on appeal. Jones v. Barnes, 463 U.S. 745 (1983). Citation). As stated above, the evidence at trial and in the PSR supported the enhancement and the undersigned denied Petitioner's objection to the enhancement at sentencing. Petitioner has not established either prong of the Strickland test. Therefore his claim

that counsel was ineffective for failing to argue at sentencing and on appeal that the obstruction enhancement should not apply is denied.

### III. ORDER

**IT IS, THEREFORE, ORDERED** that the Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 is **DENIED** and **DISMISSED** and the Government's Motion for Summary Judgment is **GRANTED**.

**SO ORDERED**.

Signed: April 2, 2009

Richard L. Voorhees
United States District Judge